# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# HELENA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Cause No. CR 17-10-H-BMM |
| Plaintiff, | |
| vs. | ORDER |
| EDWARD PAUL ELLINGTON, | |
| Defendant. | |

## INTRODUCTION

Defendant Edward Paul Ellington ("Ellington") filed a motion for compassionate release on October 15, 2024, under 18 U.S.C. § 3582(c)(1). (Doc. 135.) Ellington seeks a sentence reduction based on extraordinary and compelling circumstances: his father's dramatically declining health since the Court's 2023 review. (Doc. 135 at 5-8.) Ellington also cites his ongoing rehabilitation efforts and clean disciplinary record. (Doc. 135 at 8-9.) The Government opposes Ellington's motion. (Doc. 141.) The Government argues that there are no "extraordinary and compelling" reasons for his release, that Ellington is a danger to the safety of the community, and that his release would not be justified under the 18 U.S.C. § 3553(a) factors. (Doc. 141 at 7-14.)

1

## FACTUAL BACKGROUND

The Government filed an indictment on June 22, 2017, charging Ellington with one count of conspiracy to possess with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 846 and 841 (b)(1)(A), and three counts of possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1). (Doc. 1.) Ellington and the Government entered into a plea agreement, and on September 20, 2017, Ellington pled guilty to Count I. (Doc. 28.) Ellington's offense level was 37, and his criminal history score placed him in category IV. (Doc. 61 at 11, 19.) On May 25, 2018, the Court sentenced Ellington to the custody of the Bureau of Prisons ("BOP") for 190 months, followed by five years of supervised release on Count I. (Doc. 60.)

Ellington submitted his first motion for sentence reduction on January 6, 2022, seeking release to care for his ill father and in recognition of the progress and life changes he had achieved since being sentenced. (Doc. 98; Doc. 114.) The Court granted Ellington's motion in part on June 1, 2023, and reduced his sentence by 15 months based on substantial rehabilitation he had demonstrated. (Doc. 119.)

Ellington filed another motion for sentence reduction on May 15, 2024, which was stayed to allow exhaustion of administrative remedies. (Doc. 129; Doc. 133.) On October 15, 2024, Ellington filed the present motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1). (Doc. 135.) Ellington's projected release date is

December 21, 2028. *See* BOP Inmate Finder, https://www.bop.gov/inmateloc/ (last accessed June 17, 2025). Ellington is incarcerated at Lexington FMC. *See id.*

## DISCUSSION

### I. Availability of Relief Under 18 U.S.C. § 3582

The First Step Act amended the United States Code to "promote rehabilitation of prisoners and unwind decades of mass incarceration." *United States v. Brown*, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019) (citing Cong. Research Serv., R45558, The First Step Act of 2018: An Overview 1 (2019)). The Court may modify a term of imprisonment upon motion of a defendant if the Court finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must consider the factors set forth in 18 U.S.C. § 3553(a) and whether the reduction proves "consistent with applicable policy statements issued by the Sentencing Commission" when the Court is considering the reduction of a defendant's term of imprisonment. *Brown*, 411 F. Supp. 3d at 448 (citing 18 U.S.C. § 3582(c)(1)(A)).

Congress has not defined the circumstances that rise to the level of "extraordinary and compelling," except to say that "[r]ehabilitation of the defendant alone" is insufficient. 28 U.S.C. § 994(t); *Brown*, 411 F. Supp. 3d at 448. The law instead directs the United States Sentencing Commission ("USSC") to issue a policy statement describing "what should be considered extraordinary and compelling

3

reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t); *United States v. Aruda*, 993 F.3d 797, 800 (9th Cir. 2021).

Section 1B1.13 of the United States Sentencing Guidelines ("USSG"), titled Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) ("Policy Statement"), previously only provided a policy statement for motions filed by the BOP director. Amendments to USSG § 1B1.13 took effect on November 1, 2023. "The amendment revises §1B1.13(a) to reflect that a defendant is now authorized to file a motion under 18 U.S.C. § 3582(c)(1)(A), making the policy statement applicable to both defendant-filed and BOP-filed motions." USSC, Amendments to the Sentencing Guidelines, Policy Statements, Official Commentary, and Statutory Index, at 7, https://www.ussc.gov/sites/default/files/pdf/amendment-process/official-text-amendments/202305_Amendments.pdf.

The amendments provide as follows:

Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:

(1) Medical Circumstances of the Defendant.—

. . .

    (B) The defendant is—
        (i) suffering from a serious physical or medical condition,

        (ii) suffering from a serious functional or cognitive impairment, or

4

            (iii) experiencing deteriorating physical or mental health because of the aging process,

    that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

. . .

(5) Other Reasons.—The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

(6) Unusually Long Sentence.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

USSC, *Amendments to the Sentencing Guidelines, Policy Statements, Official Commentary, and Statutory Index*, at 3. The catchall "other reasons" provision reflects the USSC's belief that "guidance beyond that provided in the amended policy statement regarding what circumstances or combination of circumstances are sufficiently extraordinary and compelling to warrant a reduction in sentence is best provided by reviewing courts." (*Id.* at 10.) The "unusually long sentence" provision applies where there have been non-retroactive changes to the law. (*Id.*) This

provision recognizes that "[o]ne of the expressed purposes of section 3582(c)(1)(A) when it was enacted in 1984 was to provide a narrow avenue for judicial relief from unusually long sentences." (*Id.* at 11 (citing S. REP. NO. 98–225 (1983)). USSG § 1B1.13(b).

### A. Exhaustion of Remedies

Ellington appropriately exhausted his administrative remedies as required before filing his motion for compassionate release. According to his counsel's affidavit, Ellington submitted a BP8 request for a sentence reduction to the warden at USP Atlanta on or about June 30, 2024, seeking relief based on his father's declining health. (Doc. 135.) Ellington has exhausted his administrative remedies, as more than 30 days have elapsed since that request was sent. 18 U.S.C. § 3582(c)(1)(A).

### B. Reason for Reduction

Ellington asserts that the Court should find that extraordinary and compelling reasons for sentence reduction exist under the new Amendments by the U.S. Sentencing Commission. Ellington cites his father's declining health, his role as the only available caregiver, and his post-sentencing rehabilitation as factors supporting a finding of extraordinary and compelling reasons.

#### 1. Mr. Ellington's father is ill and in need of care and assistance

Ellington argues that his sentence should be reduced based on his father's declining health and need for caregiving assistance, under USSG § 1B1.13(b)(3)(C).

6

Ellington argues that his father's health has declined dramatically since the Court's 2023 review, including suffering a severe heart attack in September 2024 that has left him unable to perform basic activities of daily living such as cooking, showering, grocery shopping, and obtaining his medication. (Doc. 135 at 6.) Ellington further argues that he qualifies as the only available caregiver. Although his father is married, Ellington argues that his stepmother is eleven years older than his father, has her own health struggles, and is not able to provide the level of care his father requires. (Doc. 135 at 7.) Though Ellington has a stepbrother, Ellington argues he lives an hour away and works full-time, limiting his assistance to at most once per week. (Doc. 135-2.) Ellington claims that no other family is available to provide care. (Doc. 135 at 7.)

The Government contends that Ellington has not demonstrated that he is the only available caregiver, noting that his father is married and has a stepson who can provide some assistance. (Doc. 141 at 8.) The Government contends that it is unclear why Ellington's stepmother cannot care for his father, characterizing her health struggles as "vague," and suggests that Ellington's father may be able to obtain paid care given his military retirement. (Doc. 141 at 8.) The Government also emphasizes that Ellington has never previously provided care to someone with medical needs and has not lived with his father since he was six months old, raising questions about his suitability as a caregiver. (Doc. 141 at 8.) Moreover, the Government argues that

Ellington's history of violence toward family members raises serious concerns about releasing him into a caregiving role with someone who may be physically vulnerable. (Doc. 141 at 8–9.)

Under USSG § 1B1.13(b)(3)(C), extraordinary and compelling reasons exist when there is "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent." The Court must determine whether Ellington's father is incapacitated and whether Ellington would be the only available caregiver.

The record establishes that Ellington's father has experienced a significant decline in health since the Court's 2023 review. According to the affidavit of Ellington's father, he suffered a severe heart attack in September 2024, has lost approximately 80 pounds in the past year, requires a 24-hour heart monitor, and struggles with basic activities of daily living. (Doc. 135-2.) The Court finds that these medical conditions constitute incapacitation within the meaning of the guideline.

The Court finds, however, that Ellington has not established that he would be the "only available caregiver" as required by USSG § 1B1.13(b)(3)(C). The Court recognizes that Ellington's stepmother has her own health issues, and his stepbrother lives an hour away and works full-time. Nevertheless alternative care arrangements exist. (Doc. 61 at 22.)

The Court acknowledged that Ellington's father has stated that "We [himself and his wife] do not have anybody else to provide this care." (Doc. 142 at 1-2.) The record indicates, however, that Ellington's father is a military retiree who may have access to other care options, including paid care services. (Doc. 61 at 14.) Additionally, the Court appreciates the importance of family caregiving for elderly family members. The Court remains concerned about Ellington's suitability as a caregiver given his extensive history of domestic violence and the fact that he has not lived with his father since early childhood and has no prior caregiving experience. (*Id.* at 16-18, 22.)

The Court recognizes the difficult circumstances facing Ellington's family and sympathizes with his desire to care for his father. The guideline requires, however, that the defendant be the "only available caregiver." Ellington has not satisfied this requirement. The Court finds that extraordinary and compelling reasons do not exist under USSG § 1B1.13(b)(3)(C).

**2. Mr. Ellington's post-sentencing rehabilitation**

"Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). Ellington has submitted evidence of continued rehabilitative programming since the Court's 2023 sentence reduction. The record shows that Ellington has qualified for resident drug treatment, continued HVAC vocational training, and maintained employment in the facility

9

dining room. (Doc. 135-3.) Ellington also argues that he is eligible or close to eligible for community-based placement, with a conditional transition date of December 2, 2025, according to the BOP First Step Act Time Credit Assessment. (Doc. 142 at 3-4) Ellington argues this eligibility demonstrates his readiness for reintegration and for his ability to transition into the role of his father's caregiver.

The Government acknowledges that Ellington has taken classes and avoided discipline in prison but argues that a significant difference exists between doing well in prison and doing well in society. (Doc. 141 at 10.) The Government contends that Ellington's history in society shows a lifetime of criminal conduct involving violence and intimidation, pointing to his extensive history of domestic violence including multiple convictions for partner family member assault, threats to kill victims, and violations of protection orders. (*Id.* at 10-11.) The Government argues that Ellington's good behavior in the controlled prison environment does not demonstrate he will not be a danger if released, given his pattern of using violence, threats, and intimidation to terrify those closest to him throughout his life. (*Id.* at 11.)

The Court commends Ellington on his continued engagement in these programs. The Court also notes that Ellington has had no incident reports in the past six months and has been classified as "low risk recidivism level." (*Id.*) The Court commends Ellington on this continued good behavior and progress since the Court's previous review. The Court recognizes, however, that rehabilitation alone cannot

10

serve as the basis for a sentence reduction under 28 U.S.C. § 3582(c)(1)(A). 28 U.S.C. § 994(t). Rehabilitation may be considered in combination with other extraordinary and compelling circumstances. Rehabilitation alone cannot justify compassionate release.

### 3. Section 3553(a) Factors

The Court still must consider whether reducing Ellington's sentence as requested would comport with the § 3553(a) factors. Section 3553(a) of Title 18 of the United States Code provides:

> The court, in determining the particular sentence to be imposed, shall consider—
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a). The Court also must consider the kinds of sentences available, the need to provide restitution to any victims, the recommended guideline sentence, any pertinent policy statement, and the need to avoid unwarranted sentence disparities. (*Id.*)

The Government argues that the § 3553(a) factors weigh heavily against

11

another sentence reduction for Ellington. (Doc. 141 at 12-14.) The Government contends that Ellington trafficked over 1.5 kilograms of methamphetamine and was at the "top of the pyramid" in a conspiracy that caused immeasurable damage to the Bozeman community. (Doc. 141 at 12.) The Government emphasizes Ellington's extensive criminal history involving violence and intimidation, particularly his pattern of domestic violence against those closest to him. (Doc. 141 at 12-13.) The Government also argues that Ellington has shown "little to no respect for the law" despite numerous interventions, and that his 190-month sentence was specifically designed to deter him from continuing his criminal path. (Doc. 141 at 12-13.)

The nature and circumstances of Ellington's offense remain serious. Ellington was one of the largest drug distributors in the Gallatin Valley, responsible for distributing methamphetamine to numerous dealers. (Doc. 61 at 6.) Ellington's conspiracy involved violence and firearms, including the use of enforcers to collect drug debts. (*Id.* at 10.) The need for the sentence to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" weighs against further reduction. 18 U.S.C. § 3553(a)(2)(A).

The Court previously considered the § 3553(a) factors when granting Ellington's first compassionate release motion and found that a 175-month sentence comported with those factors. Granting a further sentence reduction would significantly undermine the seriousness of Ellington's offense and the goal of

deterring him from continuing his criminal pattern. The Court finds that the § 3553(a) factors do not support an additional sentence reduction.

Ellington's claims under § 3582(c)(1) fail because he has not established extraordinary and compelling reasons for sentence reduction. Ellington has not demonstrated that he is the "only available caregiver" for his father as required under USSG § 1B1.13(b)(3)(C). Ellington's post-sentencing rehabilitation, though commendable, cannot alone constitute extraordinary and compelling reasons under 28 U.S.C. § 994(t). The § 3553(a) factors weigh against further sentence reduction given the serious nature of Ellington's offense and his extensive criminal history.

The Court commends Ellington's continued progress and steps towards rehabilitation, including his qualification for resident drug treatment, HVAC vocational training, facility employment, and clean disciplinary record over the past six months. The Court also acknowledges his father's deteriorating health condition and need for care. These factors do not outweigh the serious nature of Ellington's drug trafficking conspiracy, his history of violence and intimidation, and the substantial 15-month reduction this Court has already granted. The Court encourages Ellington to continue his rehabilitation efforts and return to the Court after having demonstrated further progress in his rehabilitation.

## CONCLUSION

Ellington has not demonstrated that extraordinary and compelling reasons

exist for a sentence reduction under 18 U.S.C. § 3582(c)(1). This Court has already granted Ellington significant relief by reducing his sentence by 15 months in 2023. The § 3553(a) factors weigh against further reduction given the serious nature of Ellington's offense and his criminal history. Additional reduction is not warranted under the circumstances presented.

## ORDER

Accordingly, **IT IS ORDERED** that Ellington's motion for compassionate release (Doc. 135) is **DENIED.**

DATED this 23rd day of June, 2025.

_____
Brian Morris, Chief District Judge
United States District Court